UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| MADILANE WHATLEY, | ) | Civil Action No.: 4:25-cv-09598-RMG-TER |
| | ) | |
| Plaintiff, | ) | REPORT AND RECOMMENDATION |
| | ) | |
| -vs- | ) | |
| | ) | |
| Frank Bisignano, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income(SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.

## I.  RELEVANT BACKGROUND

### A.    Procedural History

Plaintiff filed an application for SSI on March 21, 2022. (Tr. 31). Her claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. Plaintiff and a vocational expert (VE) testified at a hearing in October 2024. (Tr. 31). The Administrative Law Judge (ALJ) issued an unfavorable decision on October 23, 2024, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 31-44). Plaintiff filed a request for review of the ALJ's decision. The Appeals Council denied the request for review in June 2025, making the ALJ's decision the Commissioner's final decision. (Tr.1-3). Plaintiff filed this action in August 2025.

(ECF No. 1).

## B.     Background

### 1.     Introductory Facts

Plaintiff was born in 1962 and was fifty-nine years old when the application was filed. (Tr. 43). Plaintiff has past work experience as a warehouse worker. (Tr. 42). Plaintiff alleges disability originally due to "anxiety, bipolar disorder, panic disorder, PTSD, bilateral hip pain, restless leg syndrome and hypertension." (Tr. 71). Pertinent records will be addressed under the relevant issue headings.

### 2.     The ALJ's Decision

In the decision of October 23, 2024, the ALJ made the following findings of fact and conclusions of law (Tr. 31-44):

1.    The claimant has not engaged in substantial gainful activity since March 21, 2022, the application date (20 CFR 416.971 *et seq.*).

2.    The claimant has the following severe impairments: depression, anxiety, borderline personality disorder, and posttraumatic stress disorder (20 CFR 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can understand, remember, and carry out simple tasks or instructions, can perform simple tasks that do not involve a specific production rate pace, such as assembly line work or hourly production quotas, in jobs involving only simple, work-related decisions with few, if any, work place changes. She can perform simple tasks for two-hour blocks of time with normal rest breaks during an eight-hour workday, with only occasional interactions with

coworkers and the public.

5.   The claimant is capable of performing past relevant work as a warehouse worker (DOT # 922.687-058, SVP 2, medium exertion). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6.   The claimant has not been under a disability, as defined in the Social Security Act, since March 21, 2022, the date the application was filed (20 CFR 416.920(f)).

## II. DISCUSSION

Plaintiff  argues the ALJ erred in the subjective symptom evaluation by reliance on intermittent symptom improvement as to severe mental impairments contrary to *Shelley Cannon v. Comm'r*, 61 F 4 341 (4th Cir. 2023). (ECF No. 15 at 22-25). Plaintiff argues the ALJ's RFC is not supported because the ALJ found Dr. Loring's opinions to be somewhat persuasive but did not include some limits in the RFC. (ECF No. 15 at 18). Defendant argues the ALJ's analysis here was sufficient, was in accordance with the applicable law, and Plaintiff has failed to show that the ALJ's decision is not based on substantial evidence.

## A.   LEGAL FRAMEWORK

### 1.   The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.  42 U.S.C. § 423(d)(1)(A).

3

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

4

customarily performed in the economy or as the claimant actually performed the work. See 20

C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant

bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §

423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability

to return to PRW, the burden shifts to the Commissioner to come forward with evidence that

claimant can perform alternative work and that such work exists in the regional economy. To satisfy

that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs

available in the national economy that claimant can perform despite the existence of impairments

that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the

Commissioner satisfies that burden, the claimant must then establish that he is unable to perform

other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*,

482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the

Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of

that federal court review is narrowly-tailored to determine whether the findings of the Commissioner

are supported by substantial evidence and whether the Commissioner applied the proper legal

standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971);

*Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the

evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d

846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational.  *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision."  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**B.     ANALYSIS**

**Subjective Symptom Evaluation; Mental; *Cannon***

Plaintiff argues the ALJ erred in the subjective symptom evaluation by reliance on intermittent symptom improvement as to severe mental impairments contrary to *Shelley Cannon v. Comm'r*, 61 F 4 341 (4th Cir. 2023). (ECF No. 15 at 22-25).

SSR 16-3p sets out "the process ALJs use to evaluate the intensity and persistence of a claimant's symptoms and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the record." *Id.* (internal citations and quotations omitted). Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps.  First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged.  Not until such underlying impairment is deemed established does the fact-finder proceed to the second step: consideration of

the entire record, including objective and subjective evidence, to evaluate the intensity and persistence of symptoms to determine how symptoms limit capacity for work. *See also* 20 C.F.R. § 404.1529; SSR16-3p, *4.

The ALJ may choose to reject a claimant's testimony regarding his condition, but the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). A claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595. The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See id.*; *see* SSR 16-3p, at *4.

A claimant's statements about intensity, persistence, and limiting effects of symptoms, which are inconsistent with the objective medical evidence and other evidence, are less likely to reduce her capacity to perform work related activities. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). An individual's symptoms are evaluated based on consideration of objective medical evidence, an individual's statements directly to the Administration, or to medical sources or other sources, and the following factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

7

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, at *7; 20 C.F.R. § 416.929(c).  The ALJ at step three is to "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record."  SSR 16-3p, at *11.

The ALJ found Plaintiff had severe impairments of depression, anxiety, borderline personality disorder, and PTSD. (Tr. 34). Plaintiff's original allegations also included bipolar disorder and panic disorder. (Tr. 71).

Here, Plaintiff has specifically asserted *Shelley Cannon v. Comm'r*, 61 F. 4th 341 (4th Cir. 2023) as applicable. In *Shelley C.*, the Fourth Circuit Court of Appeals found that depression, "particularly chronic depression" is "one of those other diseases" quoted in *Arakas*. *Id.* at 361. "Stated differently, symptoms of MDD, like those of fibromyalgia, are 'entirely subjective,' determined on a case-by-case basis. Ultimately, because of the unique and subjective nature of MDD, subjective statements from claimants 'should be treated as evidence substantiating the claimant's impairment.'" *Id.* at 361-362 (internal citations omitted). It is error for an ALJ to improperly increase the burden of proof by "requiring that her subjective statements be validated by objective medical support." *Id.* at 362.

The ALJ summarized Plaintiff's allegations as:

The claimant testified that because of her depression, there are times when she does not want to leave her room and that aside from cooking and cleaning, she does not do much of anything (Hearing Testimony). On the function forms, the claimant

indicated that she has problems with her memory, focus, and concentration, stating that common instructions are difficult and that she cannot follow through. She also noted that she has social anxiety and cannot deal with social interactions, crowds, or perform in groups (6E; 11E).

(Tr. 36). The ALJ found Plaintiff's statements about her symptoms were not entirely consistent with the medical evidence. (Tr. 36).

The ALJ began by reviewing February 2020 primary care notes. (Tr. 36). The ALJ noted Plaintiff had been without medication for two years and had a normal exam with a referral to psychiatry, citing Exhibit 1F/66-68. (Tr. 36-37). Exhibit 1F is Dr. Cole's primary care notes where Plaintiff reported a history of PTSD and panic attacks, managed previously with Buspar and Ativan. (Tr. 352). Dr. Cole diagnosed Plaintiff with PTSD. (Tr. 354).

In April 2020 Plaintiff was seen for mental health care intake. (Tr. 37). The ALJ noted Plaintiff reported social anxiety, anxiety, depression, and tired mood, with familial stressors and resurfaced memories, citing Exhibit 1F/63. (Tr. 37). Plaintiff reported she had symptoms the last year but they had increased since January 2020. (Tr. 349).

Plaintiff was seen by psychiatry in April 2020 with symptoms of anxiety, panic attacks, depression, irritability, mood swings, impaired social relationships, and impulsivity, with the ALJ citing Exhibit 1F/55. (Tr. 37). The ALJ noted exam of nervous/irritable mood along with some "normals." (Tr. 37, 348). Plaintiff was prescribed medications and placed on a waitlist for therapy. The ALJ noted diagnosis of PTSD, dysthymia, and anxiety. (Tr. 37). Stedman's Medical Dictionary defines dysthymia as "a chronic mood disorder manifested as depression for most of the day, more days than not." Stedmans Medical Dictionary 274660. The SSA defines "dysthymia" as persistent depressive disorder. *Rosado v. Berryhill*, 2018 WL 816578, at *4 (E.D. Va. Jan. 22, 2018), report

9

and recommendation adopted, 2018 WL 813891 (E.D. Va. Feb. 9, 2018) (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 1§ 12.04b.). NP Cromer noted Plaintiff had just gotten insurance and was now able to get care. (Tr. 341). NP Cromer noted Plaintiff "may have some cluster B traits going on." (Tr. 342). Plaintiff reported having trouble at work with anxiety. (Tr. 342). Plaintiff was prescribed therapy and Prozac for anxiety and depression and Vistaril for anxiety and sleep. (Tr. 348).

Plaintiff started therapy in May 2020, with the ALJ citing Exhibit 1F/49. (Tr. 37). Plaintiff reported decreased appetite and increased insomnia. (Tr. 335). Impression was PTSD, dysthymia, and anxiety with rule out panic disorder. (Tr. 335).

The ALJ noted improvement in June 2020 therapy notes, citing Exhibit 1F/38-40 and that Plaintiff was frustrated with refusal of benzodiazepine. (Tr. 37). As to needing that medication, Plaintiff reported being really tired of having panic attacks and calling EMS. (Tr. 324). Plaintiff reported she had been missing work and would be terminated after the next write-up. (Tr. 324). Plaintiff reported understanding the reasoning for not prescribing medications. (Tr. 324). Plaintiff was willing to try new suggestions and had some improvement in appetite, sleep, and energy. (Tr. 324).

The ALJ considered Plaintiff went to the emergency room four different times in July 2020 for anxiety attacks. (Tr. 37).

The ALJ discussed Plaintiff changed treatment to the MHC in July 2020, citing Exhibit 2F/8-9. (Tr. 37). Plaintiff stated she changed providers because after four months she could not get her anxiety in control. (Tr. 518). The ALJ noted some normals and that Plaintiff reported worsening depression and anxiety. (Tr. 37). Plaintiff reported difficulty falling asleep, racing thoughts, difficulty being in crowds, worsening anxiety, difficulty breathing, gritting teeth, depression, decreased energy,

dysregulated moods, reclusive behaviors, and decreased appetite. (Tr. 518).

The ALJ noted in September 2020, Plaintiff was struggling with worsening severe anxiety with panic attacks, anxiety, frustration, and irritability. (Tr. 37). The ALJ noted an exam of "calm but anxious." Plaintiff was prescribed Ativan. The ALJ noted a month later Plaintiff had no attacks, still some anxiety, was laughing big and a lot with full range of affect, talkative, and anxious mood. (Tr. 37).

In January 2021, the ALJ noted Plaintiff had suicidal ideation after intoxication, citing Exhibit 1F/8. (Tr. 37).  The ALJ noted followup with mental health with exam of anxious mood; Plaintiff was prescribed Paxil.  (Tr. 38).

In February 2021, Plaintiff reported Paxil helped anxiety but not depression. Plaintiff had apathy, decreased energy, and decreased energy. (Tr. 38, 534).

In April 2021, Plaintiff reported Paxil was causing nightmares and "her anxiety was mostly controlled." Plaintiff had continued apathy and depression. The ALJ cited Exhibit 2F/21-22. Plaintiff was prescribed Lamictal. Plaintiff reported continuing to "frequently feel depressed" and apathetic. Plaintiff reported having a few periods of hours or a day of "being up" with energy and talking but then crashes for several days. (Tr. 537). Diagnosis included consider bipolar. (Tr. 538).

In May 2021, Plaintiff reported doing a lot better with the new medication. Plaintiff "denied any depressive or manic symptoms at that visit and reported that her energy and concentration were within normal limits. The ALJ cited Exhibit 2F/23-24. (Tr. 38). While the ALJ cites May for this visit, it appears to be a June 29 visit. (Tr. 539).

Plaintiff was not seen until October 2021 and reported a one month episode of depression. Plaintiff had anhedonia and difficulty with concentration. (Tr. 541). The ALJ stated: "The claimant

was noted to be bright and talkative, but interruptible. She described periods of excessive energy, increased talkativeness, expansive mood, racing thoughts, increased goal directed activity, and decreased need for sleep, with episodes lasting two to three days." (Tr. 38). Plaintiff reported panic attacks twice a month and flashbacks once or twice a day. The ALJ noted Plaintiff "diagnosed with bipolar disorder, type II, posttraumatic stress disorder, panic disorder, and generalized anxiety disorder, with a consideration for cluster B traits," citing Exhibit 2F/26. (Tr. 38). Plaintiff reported insomnia due to racing thoughts and other times of 18 hours of sleep when depressed. (Tr. 540). Plaintiff reported her last panic attack was September 15, 2021. (Tr. 541). Some medications were increased with others decreased. (Tr. 544).

In March 2022, "the claimant reported intermittent periods of depressed mood, hopelessness, and anhedonia, as well as manic symptoms, panic attacks once per week, and flashbacks once or twice a day (4F/1)." (Tr. 38). Plaintiff reported low energy, low appetite, and difficulty with concentration. (Tr. 689).

In April 2022, Plaintiff was seen in the emergency for suicidal ideation while intoxicated. (Tr. 38).

In May 2022, Plaintiff reported that she had a one month long episode of depression in March, but reported now her energy, appetite, and concentration were good. The ALJ noted Plaintiff reported flashbacks once or twice a day with avoidant behavior, hyperviligance, and emotional detachment. (Tr. 39, 701).

In June 2022, Plaintiff was seen for consultative exam where she smiled a lot and seemed happy with later crying. Plaintiff had tangential thought process, somewhat distractible, variable insight and judgment, "probably poor on occasion." (Tr. 39, 787-789).

In August and September 2022, Plaintiff had "depressed mood with irritability, difficulty concentrating, anhedonia, low energy, and hopelessness, with a slight improvement noted with increased medication in September 2022. The claimant reported her last episode of hypomania was in May 2022, and her last panic attack was two months ago. She endorsed continued flashbacks at the rate of one to two per day, hypervigilance, hyper startle, avoidant behavior, and emotional detachment (8F/2, 6)." (Tr. 39).

Plaintiff had an increase of panic attacks in October 2022 when her son died.

The ALJ considered 2023 notes:

Mental health center records in February 2023 note the claimant reporting that her medications have been helpful with her mood, despite her grief. She reported fewer episodes of tearfulness and denied depressed mood, hopelessness, and anhedonia. She also denied irritability and difficulty concentrating. ...She did not report any new episodes of hypomania but complained of intermittent anxiety when thinking of her son, noting three panic attacks since November 2022, with the last one occurring two weeks prior. She stated she was having occasional nightmares, flashbacks once or twice a day, as well as hypervigilance, hyper startle, and avoidant behavior (8F/17). In July 2023, the claimant reported less grief overall, with occasional periods of depression lasting one to two days, noting three to four episodes in the past five months. The claimant reported her episodes were "not as bad as they used to be." She denied depressed mood and anhedonia, and denied irritability and problems with concentration, except for when she is depressed. .... She denied any recent panic attacks or new episodes of hypomania. Her symptomatology for posttraumatic stress disorder remained unchanged, as did her mental status examination, with the exception of her mood, which was noted as 'good' (8F/26). Improvement was also noted in October 2023, where the claimant stated she was doing better with the medication and reported fewer mood swings, significantly less anxiety, denying any recent panic attacks and nightmares. She also reported less irritability and less difficulty concentrating (8F/35).

(Tr. 39-40)(emphasis added). By August 2024, Plaintiff had "significant depression," not wanting to get dressed and low motivation to leave her home. (Tr. 40).

Plaintiff argues that "the ALJ was looking for a certain level of objective evidence to support

Whatley's subjective complaints contrary to *Shelley*." (ECF No. 15 at 25).

The ALJ found Plaintiff's reports were "inconsistent with the objective evidence." (Tr. 40). The ALJ relied on exams of memory and attention/concentration, no impatient hospitalizations, and Plaintiff's ability to care for her pet, prepare herself meals, bathe, and do laundry and yardwork. (Tr. 40).

The ALJ's reasoning here is similar to the error in *Shelley C.* where reliance on some parts of exams to discount subjective symptoms of depression constitutes improper reliance on objective evidence. 61 F.4th at 360-361. Relying on this evidence to discount the severity of Plaintiff's depression symptoms is inconsistent with *Shelley C.*, which held that depression is a condition that does not produce consistent objective medical evidence of the severity of its symptoms. The ALJ could not "rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount [Plaintiff's] subjective complaints regarding symptoms" of this disorder. *Arakas*, 983 F.3d at 97. *Shelley C.* rejected the use of "benign" objective markers and treatment labels as proxy proof that depression symptoms are not severe or persistent. *Shelley C.*, 61 F.4th at 362-64. *Shelley C.* was decided in 2023; the ALJ's decision here was in 2024.

Based on the foregoing, the court can not find that the ALJ's decision regarding the subjective symptom evaluation is supported by substantial evidence and remand is appropriate. Upon remand, the ALJ should take into consideration all of Plaintiff's briefed allegations of error and support findings with citation to substantial evidence and provide logical explanation from the evidence to the ultimate conclusions. *See Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).

### III. CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's

decision in the instant case.  The court cannot, however, conduct a proper review based on the record presented.  Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), it is recommended that the Commissioner's decision be reversed and that this matter be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

<table>
<tr><td></td><td>s/ Thomas E. Rogers, III</td></tr>
<tr><td>April 7, 2026</td><td>Thomas E. Rogers, III</td></tr>
<tr><td>Florence, South Carolina</td><td>United States Magistrate Judge</td></tr>
</table>

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina 29503

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).